Terri R. Pickens (ISB #5828)
**PICKENS LAW, P.A.**
398 S. 9th Street, Suite 240
Boise, ID 83702
terri@pickenslawboise.com
Tel: (208) 954-5090
Fax: (208) 954-5099

David R. Fox*
Christopher Dodge*
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
dfox@elias.law
cdodge@elias.law
jpinchak@elias.law
Tel: (202) 968-4490

*Attorneys for Proposed Intervenors*
*\*Pro hac vice application forthcoming*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| **THE UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **PHILIP MCGRANE**, in his official capacity as Idaho Secretary of State, <br><br> Defendant. | Case No.: 1:26-cv-00197-BLW <br><br><br> **MEMORANDUM IN SUPPORT OF PROPOSED INTERVENORS' MOTION TO INTERVENE** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

I.      Federal law has long made voter list maintenance a state responsibility, consistent
        with the constitutional separation of powers. ................................................... 3

II.     DOJ seeks to amass a nationwide voter registration database............................ 4

III.    DOJ sued Idaho to obtain its complete voter registration list............................. 5

IV.     DOJ's suit threatens to harm NAACP, NAACP Tri-State, the Idaho Alliance, and
        their members.................................................................................................... 7

LEGAL STANDARD..................................................................................................... 10

ARGUMENT ............................................................................................................... 11

I.      Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2)............... 11

        A.      This motion is timely. .......................................................................... 12

        B.      Proposed Intervenors' privacy and civic engagement interests are at risk of
                impairment through improper disclosure of voter records to DOJ. ...................... 12

        C.      The existing parties do not adequately represent Proposed Intervenors............... 16

II.     Alternatively, Proposed Intervenors should be granted permissive intervention. ............ 18

CONCLUSION.............................................................................................................. 20

CERTIFICATE OF SERVICE ......................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1789 Found. Inc. v. Fontes*,
No. 24-cv-02987, 2025 WL 834919 (D. Ariz. Mar. 17, 2025).......................................... 20

*All. for Retired Ams. v. Bessent*,
770 F. Supp. 3d 79 (D.D.C. 2025) ................................................................................ 14, 15

*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ............................................................................................ 15

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) ............................................................................................ 11

*Ariz. All. for Retired Ams. v. Clean Elections USA*,
638 F. Supp. 3d 1033 (D. Ariz. 2022) ............................................................................... 14

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013)................................................................................................................... 3

*Bellitto v. Snipes*,
No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ....................................... 17

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022)................................................................................................... 2, 16, 17

*Brooklyn Branch of NAACP v. Kosinski*,
735 F. Supp. 3d 421 (S.D.N.Y. 2024)................................................................................. 15

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) .............................................................................................. 13

*Cal. ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) .............................................................................................. 13

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
42 F.4th 1013 (9th Cir. 2022) ............................................................................................. 19

*Celgard LLC v. Targray Tech. Int'l Inc.*,
No. SAMC20-00128, 2021 WL 831030 (C.D. Cal. Feb. 10, 2021) ................................... 14

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) ..................................................................................... 12, 15

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ......................................................................................... 13, 17

*City of Chicago v. FEMA*,
    660 F.3d 980 (7th Cir. 2011) ...................................................................... 18

*Clark v. Putnam County*,
    168 F.3d 458 (11th Cir. 1999) .................................................................... 18

*DNC v. Hobbs*,
    948 F.3d 989 (9th Cir. 2020) ...................................................................... 15

*DNC v. Reagan*,
    329 F. Supp. 3d 824, 841 (D. Ariz. 2018) ................................................. 15

*Fiandaca v. Cunningham*,
    827 F.2d 825 (1st Cir. 1987) ....................................................................... 18

*Foster v. Love*,
    522 U.S. 67 (1997) ........................................................................................ 3

*Freedom from Religion Found. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) ...................................................................... 11

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) .................................................................... 16

*Hoopa Valley Tribe v. U.S. Bureau of Reclamation*,
    648 F. Supp. 3d 1196 (E.D. Cal. 2022) ....................................................... 16

*Husted v. A. Philip Randolph Inst.*,
    584 U.S. 756 (2018) ................................................................................... 3, 4

*Issa v. Newsom*,
    No. 22-CV-1044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) .............. 12, 15

*Judicial Watch, Inc. v. Ill. State Bd. of Elections*,
    No. 24 C 1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ......................... 18

*Jurj v. Andersen*,
    No. 3:21-CV-00088-YY, 2022 WL 19349528 (D. Or. Sep. 16, 2022) ............ 14

*Kalbers v. U.S. Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021) ...................................................................... 14

*Kane Cnty. v. United States*,
    928 F.3d 877 (10th Cir. 2019) .................................................................... 18

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ....................................................................... 7

iii

*Kleissler v. U.S. Forest Serv.*,
　　157 F.3d 964 (3d Cir. 1998)...................................................................................... 16

*La Union del Pueblo Entero v. Abbott*,
　　29 F.4th 299 (5th Cir. 2022) ................................................................................... 15

*League of United Latin Am. Citizens v. City of Boerne*,
　　659 F.3d 421 (5th Cir. 2011) ................................................................................... 14

*League of Women Voters of N.C. v. North Carolina*,
　　No. 1:13-cv-660, 2014 WL 12770081 (M.D.N.C. Jan. 27, 2014)................................... 20

*March for Our Lives Idaho v. McGrane*,
　　697 F. Supp. 3d 1029 (D. Idaho 2023) ..................................................................... 15

*Mi Familia Vota v. Fontes*,
　　719 F. Supp. 3d 929 (D. Ariz. 2024) ........................................................................ 15

*NAACP v. Alabama*,
　　357 U.S. 449 (1958)................................................................................................... 8

*NAACP v. Claiborne Hardware Co.*,
　　458 U.S. 886 (1982)................................................................................................... 8

*Paher v. Cegavske*,
　　No. 3:20-cv-00243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) .................................. 15

*Pub. Int. Legal Found., Inc. v. Winfrey*,
　　463 F. Supp. 3d 795 (E.D. Mich. 2020)..................................................................... 20

*Relman Colfax PLLC v. Fair Hous. Council of San Fernando Valley*,
　　No. 19-cv-8612 PSG (JCX), 2020 WL 9460652 (C.D. Cal. Apr. 20, 2020)................... 20

*RNC v. N.C. State Bd. of Elections*,
　　120 F.4th 390, 394 (4th Cir. 2024) ............................................................................. 3

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
　　187 F.3d 1096 (9th Cir. 1999) .................................................................................. 11

*South Carolina v. United States*,
　　585 F. Supp. 418 (D.D.C. 1984)............................................................................... 11

*Sw. Ctr. for Biological Diversity v. Berg*,
　　268 F.3d 810 (9th Cir. 2001) ............................................................................. 11, 18

*Texas v. United States*,
　　798 F.3d 1108 (D.C. Cir. 2015)................................................................................ 11

iv

*United Guar. Residential Ins. Co. v. Phila. Sav. Fund Soc.*,
   819 F.2d 473 (4th Cir. 1987) .................................................................................. 17

*United States v. Benson*,
   --- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026). 5

*United States v. Benson*,
   No. 1:25-cv-01148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025)................................. 2

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ..................................................................................... 11

*United States v. Oregon*,
   No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025)..................................... 2

*United States v. Oregon*,
   No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ........................................ 5

*United States v. Weber*,
   --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ....... 5

*W. States Trucking Ass'n v. Becerra*,
   No. 19-cv-02447, 2020 WL 1032348 (C.D. Cal. Mar. 2, 2020)..................................... 12

*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) ................................................................................ 11, 12

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) ................................................................................. 13

*Yniguez v. Arizona*,
   939 F.2d 727 (9th Cir. 1991) ............................................................................... 14, 15

**Statutes**

U.S. Const. art. I, § 4, cl. 1............................................................................................. 3

52 U.S.C. § 20501(b) ..................................................................................................... 3

52 U.S.C. § 20507(a) ..................................................................................................... 3

52 U.S.C. § 20503(b) ..................................................................................................... 4

52 U.S.C. § 21083(a) ..................................................................................................... 4

52 U.S.C. § 21111........................................................................................................... 7

Idaho Code § 74-106.................................................................................................. 6, 13

**Rules**

Fed. R. Civ. P. 24(b) .................................................................................. 2, 14, 19, 20

**Other Authorities**

7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909
    (3d ed. 2024) ............................................................................................... 16

AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET),
    https://x.com/AAGDhillon/status/2001659823335616795 ............................... 5

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build
    National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD ............. 4

Exec. Order No. 14399 § 2(a),91 Fed. Reg. 17125 (Mar. 31, 2026) ............................. 4

H.R. Rep. No. 86-956 (1959)........................................................................... 7

Jane C. Timm, *Trump Says Republicans Should 'Nationalize' Elections*, NBC News
    (Feb. 2, 2026), https://perma.cc/7HEL-KW5H .................................................. 5

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice
    Department Requests for Voter Information*, Brennan Ctr. for Just. (Apr. 3,
    2026), https://perma.cc/4K7T-GDXM............................................................ 4

Minute Order, *United States v. Evans*, No. 1:25-cv-04403 (D.D.C. Mar. 16, 2026) .................... 2

Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025),
    ECF No. 70 ................................................................................................ 20

*The National Voter Registration Act of 1993 (NVRA)*, U.S. Dep't of Just.,
    https://perma.cc/K76Z-7UQX (last visited Apr. 3, 2026) .................................... 3

Notice of Voluntary Dismissal, *United States v. Ziriax*, No. 5:26-cv-00361-G
    (W.D. Okla. Mar. 24, 2026), ECF No. 24......................................................... 18

Order, *United States v. Henderson*, No. 2:26-cv-0166-DAO (D. Utah), ECF No. 33 ................... 2

Text Order, *United States v. Amore*, No. 1:25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026) ......... 2

**INTRODUCTION**

The U.S. Department of Justice has embarked on an unprecedented campaign to compile every State's voter rolls at the federal level. To that end, DOJ sued Idaho on April 1, seeking to compel the State to turn over its complete, unredacted voter rolls, which include sensitive personal information on every registered voter in Idaho. This legal assault not only intrudes upon Idaho's constitutional prerogative to maintain its own voter registration list—it tramples the privacy rights of Idaho voters. Worse still, this intrusion is not based on any particular shortcoming by Idaho— the State is now one of thirty States (in addition to the District of Columbia) sued by DOJ as part of its scorched earth campaign to nationalize the country's voter rolls, though courts have thus far rejected its efforts. National Association for the Advancement of Colored People ("NAACP"), National Association for the Advancement of Colored People Tri-State Conference of Idaho, Nevada and Utah ("NAACP Tri-State"), and the Idaho Alliance for Retired Americans ("the Alliance") move to intervene to defend against the federal government's overreach and to preserve the privacy rights of their members and constituents in Idaho.

All three organizations satisfy the requirements for intervention under Rule 24(a)(2). NAACP, NAACP Tri-State, the Alliance, and their many Idaho members, have significant protectable interests threatened by the relief DOJ seeks, including the compelled disclosure of sensitive personal information and the frustration of their civic engagement work. The existing governmental defendant—Secretary of State Philip McGrane—does not adequately represent these private interests. While his most recent decision to turn down DOJ's demand is welcome news, it comes on the heels of a vow he made just last December to "provide the requested data" to DOJ and to "work[] collaboratively" with the federal government in furnishing it. ECF No. 2-6. The Secretary's prior willingness to cooperate with DOJ on this issue reflects why he cannot adequately represent movants: he must "bear in mind broader public-policy implications" of

1

failing to cooperate with DOJ, whereas Proposed Intervenors seek to vindicate their own rights, and those of their members—"full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (explaining why governmental defendants often do not adequately represent private interests). Because this motion is also timely, Rule 24(a)(2) is satisfied. This Court should therefore join many of its peers from DOJ's parallel suits in concluding that intervention as of right is warranted.[1]

Alternatively, movants should be granted permissive intervention under Rule 24(b). This motion is timely; their participation will not cause prejudice or delay; and they raise defenses "that share[] with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Granting intervention will also ensure that Idaho voters have a voice in this litigation over the disclosure of their sensitive and personal information. For that reason, courts across the country have permitted civic organizations—including many NAACP conferences and Alliance state chapters—to intervene in parallel voter list suits brought by DOJ. Indeed, NAACP Tri-State—which serves NAACP members in Idaho, Utah, and Nevada—has already been granted intervention in suits DOJ has filed against its two other constituent States, Utah and Nevada. *See* Ex. B, Declaration of Jeanetta Williams ("Williams Decl.") ¶ 15 (citing cases). Permitting the NAACP, NAACP Tri-State, and the Alliance to participate in this litigation will therefore aid the Court in fully developing the legal and factual issues raised by DOJ's interrelated set of suits, which further supports intervention.

---

[1] *E.g.*, *United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025); *United States v. Benson*, No. 1:25-cv-01148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025); Order, *United States v. Henderson*, No. 2:26-cv-0166-DAO (D. Utah), ECF No. 33; Text Order, *United States v. Amore*, No. 1:25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026); Minute Order, *United States v. Evans*, No. 1:25-cv-04403 (D.D.C. Mar. 16, 2026).

**BACKGROUND**

**I.     Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, including determining voter eligibility and maintaining voter lists, subject to Congress's power to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. While Congress has enacted laws governing voter registration, these laws augment existing "state voter-registration systems," *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5 (2013), rather than displacing them entirely. Congress's two primary pieces of legislation—the National Voter Registration Act ("NVRA") and Help American Vote Act ("HAVA")—also confirm that States, and not DOJ, are the custodians of voter registration data.

Congress enacted the NVRA in 1993 to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). Where it applies, the NVRA charges States—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id*. § 20507(c)–(g). It similarly makes States the custodians of voter lists. *See Husted*, 584 U.S. at 761. Idaho, however, is exempt from even the modest obligations the NVRA places upon most other States because Idaho has consistently offered same-day registration since 1994. *See* The National Voter Registration Act of 1993 (NVRA), U.S. Dep't of Just., https://perma.cc/K76Z-7UQX (last visited Apr. 3, 2026).

Congress enacted HAVA in the wake of the 2000 elections "to improve voting systems and voter access." *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). HAVA regulates how States maintain their voter rolls, requiring them to create a "computerized statewide

3

voter registration list." 52 U.S.C. § 21083(a)(1). HAVA is clear, however, that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). HAVA does not task the federal government with compiling a federal national voter registration list. Congress has instead "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the specific requirements of HAVA and the NVRA. And in any event, Idaho is exempt from federal list maintenance obligations under HAVA requiring state election officials to "perform list maintenance," 52 U.S.C. § 21083(a)(2)(A), as a result of its broader exemption from the NVRA. *See id.* §§ 20503(b)(2), 21083(a)(2)(A)(iii).

## II.    DOJ seeks to amass a nationwide voter registration database.

In the spring of 2025, DOJ began demanding unprecedented access to state voter files. To date, DOJ has sent demands to more than forty States, with plans to make similar demands on all fifty.[2] It seeks to use the data to create a national voter database that will, in course, be used in an effort to prop up President Trump's unfounded accusations that millions of non-citizens have voted in recent elections. *See supra* note 2. Indeed, just one day before DOJ filed this suit, President Trump signed a new Executive Order titled "Ensuring Citizenship Verification and Integrity in Federal Elections," which, among other things, calls for the federal government to create state-specific lists of every American citizen over the age of 18 based on federal records. *See* Exec. Order No. 14399 § 2(a), 91 Fed. Reg. 17125 (Mar. 31, 2026). DOJ's demands to the States—and President Trump's recent and past executive orders—reflect a broader effort on the part of the

---

[2] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Apr. 3, 2026), https://perma.cc/4K7T-GDXM; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

current administration to "nationalize" elections, as he himself has put it.[3]

Even so, most of the States on the receiving end of DOJ's requests for complete, unredacted voters list have refused to comply, choosing instead to uphold state-level privacy laws protecting sensitive voter information.[4] As a result, DOJ has filed over thirty lawsuits against state election officials to compel production of voter data. DOJ has presented an ever-shifting list of rationales for why it even needs this data, all while arguing that it need not offer any justification for its demands all. Public reporting, however, confirms that DOJ seeks to use the data to compel removal of hundreds of thousands of voters from the rolls.[5]

So far, each of the three courts to adjudicate motions to dismiss DOJ's lawsuits have granted them. *See United States v. Weber*, --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, --- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026).

**III.    DOJ sued Idaho to obtain its complete voter registration list.**

DOJ sent Secretary of State Philip McGrane a letter on September 8, 2025, demanding Idaho's "statewide voter registration list." Compl. ¶ 17, ECF No. 1; *see also* ECF No. 2-3. DOJ's letter requested "all fields" of Idaho's voter file, including "full name, date of birth, residential address, . . . state driver's license number or the last four digits" of voters' social security numbers. ECF No. 2-3 at 1. Idaho law, however, prohibits disclosure of a registered voter's driver's license

---

[3] Jane C. Timm, *Trump Says Republicans Should 'Nationalize' Elections*, NBC News (Feb. 2, 2026), https://perma.cc/7HEL-KW5H.

[4] *See* Martinez-Ochoa, O'Connor & Berry, *supra* note 2.

[5] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 ("You're going to see hundreds of thousands of people in some states being removed from the voter rolls.").

number, date of birth, social security number, and in some instances their physical address. *See* Idaho Code § 74-106(4), (25). Later that month, the Secretary signed a DOJ file sharing access form, Compl. ¶ 21, and uploaded a voter file to the Department of Justice's data system, though in accordance with Idaho law, it "did not include sensitive, personally identifiable information, such as driver's license numbers, dates of birth, or Social Security numbers." ECF No. 2-6 at 3.

On December 30, the Secretary wrote to DOJ "thank[ing]" it for "continued engagement," and "recognize[d] [DOJ's] authority under the Civil Rights Act to request access to election-related records." *Id.* at 2. "It is clear," the Secretary wrote, that "Idaho will be in a position to provide voter registration data." *Id.* The Secretary expressed a willingness to "work cooperatively with [DOJ] and to facilitate future uploads" of voter information, noting Idaho law's limitation of the sharing of sensitive personal data. *Id.* at 3. The Secretary also detailed the State's "routine and regular maintenance to update or remove records for individuals" ineligible to vote, and stated that Idaho "remain[ed] prepared to provide the requested data and to continue working collaboratively to finalize" a Memorandum of Agreement ("MOU") between itself and DOJ. *Id.* at 2, 4.

According to the Complaint, DOJ provided Secretary McGrane with a Proposed MOU on January 28, 2026. *See* Compl. ¶ 23. On February 26, the Secretary responded with a letter declining to provide DOJ with an unredacted copy of the State's voter file. *Id.* ¶ 24. The Secretary provided two justifications for withholding it: (1) a "recent Department filing in separate federal litigation" disclosing that "personally identifiable information from federal systems" was "transmitted outside approved channels, resulting in submission of sensitive personal information"; and (2) DOJ's "lack[] [of] a legal basis" to the State's full voter file, citing the decisions by "three federal district courts" cited above that "dismissed Department lawsuits" seeking similar information. ECF No. 2-7. The Secretary noted he was "willing to continue dialogue regarding publicly

6

available information and narrative explanations of Idaho's voter list maintenance procedures." *Id.*

DOJ responded by suing the Secretary. It seeks to compel production of Idaho's unredacted statewide voter registration list, alleging that Idaho is violating the Civil Rights Act of 1960 ("CRA") by not relenting to DOJ's demand. Compl. ¶¶ 25–27 (citing 52 U.S.C. § 20703); *see also* ECF No. 2 (filing a so-called "motion to compel" in this matter). But the CRA does not support DOJ's sweeping demand, as three courts have now held. *See supra* Background § II. The CRA— enacted amidst the Civil Rights Movement in which the NAACP played a central part—permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted it to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956 at 7 (1959). DOJ admits that is not its purpose here; rather it claims to be evaluating Idaho's compliance with list maintenance efforts required by HAVA—a statute with its own separate enforcement provisions. *See* 52 U.S.C. § 21111.

IV.  **DOJ's suit threatens to harm NAACP, NAACP Tri-State, the Idaho Alliance, and their members.**

Proposed Intervenors the NAACP, NAACP Tri-State, and the Alliance represent hundreds of individual members in Idaho, most of whom are registered voters whose sensitive personal information will be disclosed to DOJ if its lawsuit prevails. *See* Williams Decl. ¶¶ 4–7; Ex. C, Declaration of Anthony P. Ashton ("Ashton Decl.") ¶¶ 5, 10–15; Ex. D, Declaration of Dale Broadsword ("Broadsword Decl.") ¶¶ 3, 7. Each organization also works to advance the fundamental civil rights of its members and participates in voter registration work that is endangered by DOJ's efforts.

7

*NAACP.* The NAACP is the nation's oldest organization dedicated to the advancement of civil rights. Ashton Decl. ¶ 4. Founded in 1909 by pioneers of racial justice, the NAACP's core mission has long been to ensure political, educational, social, and economic equality. *Id.* The NAACP is a formal membership organization, with more than 200,000 members nationwide including more than 350 in Idaho. *Id.* ¶ 5. In furtherance of its mission, the NAACP protects the fundamental rights of its members and others in its constituency through a unique slate of programs that provide education as well as community-based advocacy and assistance to voters seeking to make their voices heard. *Id.* ¶ 8. For example, the NAACP develops and executes programs that encourage its members and other citizens—including in Idaho—to participate in the political process by registering them to vote and aiding voters in casting their ballots. *Id.* It also provides support to its thousands of state, regional, and local branches working to advance the organization's goals. *Id.* ¶ 5. When voters and potential voters served by the NAACP face government actions that make it harder to vote or discourage participation in the political process, the NAACP's efforts to advance its mission suffer. *Id.* ¶¶ 10, 15.

Over the years, the NAACP and its members have frequently been singled out by government officials who disagree with its mission, facing espionage and investigation—sometimes even physical violence—because of their advocacy efforts. *Id.* ¶¶ 7, 12. As a result, protecting its members and supporters from the unlawful disclosure of their personal information in response to government overreach has long been central to the NAACP's core mission and value system. *Cf. NAACP v. Alabama*, 357 U.S. 449 (1958); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). Given this history, many of the NAACP's members reasonably fear retribution by the current federal administration—and they are accordingly concerned about DOJ's efforts to obtain their sensitive personal information. Ashton Decl. ¶¶ 10–13. Indeed, many of the NAACP's

members have publicly advanced political views that are strongly at odds with those of the current President and his administration. *See id.* ¶ 11. If DOJ obtains the sensitive data it seeks in this lawsuit, the NAACP will be forced to contend with a growing distrust of the government and hesitance among members and constituents to participate in the political process. *Id.* ¶ 14. Given the added security risks that accompany disclosures of such information, the NAACP has a direct interest in protecting the fundamental privacy rights of its individual members. *Id.* ¶¶ 10–11, 15.

*NAACP Tri-State.* With more than 350 members across Idaho, NAACP Tri-State is the state conference of the NAACP of Idaho, Nevada, and Utah. Williams Decl. ¶ 4. NAACP Tri-State works in concert with the NAACP to ensure political, educational, and economic justice for Black Idahoans and other marginalized groups. *Id.* ¶ 3. NAACP Tri-State has a long history of fighting for and protecting fundamental rights and voting rights of its members and constituents—including by engaging in voter outreach, education, and activism. *Id.* ¶¶ 3, 6–7. NAACP Tri-State and its local branches and chapters operate and support programs that encourage members and other Idaho voters to participate in elections and provide assistance to voters. *Id.* ¶ 7. The NAACP and its members have been targets of retaliation from those who disagree with its mission and have defended against efforts to invade the privacy of their members because of those experiences. *Id.* ¶ 11. Some members are immigrants and first-generation citizens who have increasingly become the targets of unwarranted scrutiny and legal action by the current federal administration. *Id.* NAACP Tri-State's work may become significantly more difficult if its members and constituents believe that they could be punished, scrutinized, or otherwise investigated simply because they registered to vote. *Id.* ¶ 14. DOJ's effort to obtain Idaho's complete voter registration data threatens not only NAACP Tri-State's mission-critical programs, but also the fundamental privacy and voting rights of NAACP Tri-State's members. *Id.* ¶¶ 9, 13–14.

*Idaho Alliance for Retired Americans.* The Alliance is a nonprofit, social welfare organization dedicated to the interests of retirees and a chartered state affiliate of the National Alliance for Retired Americans. *See* Broadsword Decl. ¶ 3. The Alliance has over one hundred members in Idaho, including retirees from public and private sector unions, community organizations, and individual activists, most of whom are over the age of 65. *Id.* Its mission is to ensure social and economic justice and full civil rights for retirees after a lifetime of work. *Id.* To that end, the Alliance motivates its members to be politically active by encouraging and helping members register to vote, vote in elections, and answering its members questions about the registration and voting process. *Id.* ¶ 5.

Should DOJ prevail in obtaining Idaho's protected voter data, it will likely frustrate the Alliance's civic engagement and voter-turnout work. *Id.* ¶ 7. Many of its members have serious concerns regarding the disclosure of their personal information to DOJ. *Id.* They fear that the federal government will not adequately safeguard this information and that it will expose the Alliance's members to potential harm. *See id.* ¶ 10. Indeed, the Alliance's president, Mr. Broadsword, has this concern about his own sensitive information. *See id.* ¶ 9. The Alliance's mission will become more difficult if Idaho voters, including its members, fear that their personal information will be turned over to DOJ simply because they have registered to vote. *Id.* ¶ 7.

## LEGAL STANDARD

A party may intervene pursuant to Federal Rule of Civil Procedure 24 either as a matter of right, or with permission of the Court. A party seeking to intervene as a matter of right must satisfy four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

The Ninth Circuit interprets "these requirements broadly in favor of intervention," guided by "practical considerations, not technical distinctions." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)); *see also United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (discussing the Ninth Circuit's "liberal policy in favor of intervention" (citation omitted)). Courts must "take all well-pleaded, nonconclusory allegations" as true. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

"A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999). Where, as here, the intervening party does not intend to assert additional "new claims" for relief, the only requirements are that (1) the motion must be timely and (2) the applicant's claim or defense must have a question of law or fact in common with the main action. *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).[6]

## ARGUMENT

### I. Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2).

Proposed Intervenors satisfy the standards for intervention as a matter of right because their motion is timely, an adverse ruling threatens to impair their and their members' fundamental privacy and voting rights—as well as each organization's mission-critical voter-engagement programs—and the Secretary does not adequately represent their distinct, private interests.[7]

---

[6] Proposed Intervenors submit a Proposed Answer as required by Rule 24(c), *see* Ex. A, but reserve the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

[7] Proposed Intervenors are regularly granted intervention to protect the fundamental rights of their

## A.    This motion is timely.

Proposed Intervenors' motion is indisputably timely. Courts in this Circuit must consider the totality of the circumstances, including "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of [any] delay." *W. Watersheds Project*, 22 F.4th at 835–36 (citation omitted). Here, DOJ filed suit on April 1, and this motion follows mere days later—before any case schedule has been set, before the Defendant has answered, and before any "substantive proceedings have occurred." *Issa v. Newsom*, No. 22-CV-1044, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020).

Additionally, there is no conceivable prejudice to any existing party because allowing Proposed Intervenors to participate would not require altering any existing deadlines, and they agree to abide by any future deadlines set by the Court. *See W. States Trucking Ass'n v. Becerra*, No. 19-cv-02447, 2020 WL 1032348, at *2 (C.D. Cal. Mar. 2, 2020) (noting that a "motion to intervene is generally considered timely if it is filed soon after a complaint, prior to any substantive proceedings"). Thus, the motion is timely.

## B.    Proposed Intervenors' privacy and civic engagement interests are at risk of impairment through improper disclosure of voter records to DOJ.

Proposed Intervenors satisfy the "closely related" second and third requirements for intervention because they have significant protectable interests at stake, and the relief DOJ seeks threatens to impair those interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989). Under Rule 24(a)(2), "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'"

---

members as well as their mission-critical election-related work. *See, e.g.*, *South Carolina v. United States*, 585 F. Supp. 418, 419 (D.D.C. 1984) (noting intervention of NAACP as defendant); *Texas v. United States*, 798 F.3d 1108, 1111–12 (D.C. Cir. 2015) (noting intervention of Texas NAACP branches as defendants).

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). Consistent with this liberal standard, "Rule 24(a)(2) does not require a specific legal or equitable interest," and "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). Furthermore, "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citation omitted). Once an applicant has shown some protectable interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" an intervenor's interests. *Lockyer*, 450 F.3d at 442. Applicants need not show that impairment is a "certainty," only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use*, 647 F.3d at 900 (quoting Fed. R. Civ. P. 24(a)(2)).

Proposed Intervenors unquestionably satisfy the interest inquiry here in at least two separate ways. *First*, the individual members of NAACP, NAACP Tri-State, and the Alliance are registered Idaho voters who have significant protectable interests in their personal voter registration data, which is legally safeguarded under Idaho law. Williams Decl. ¶¶ 8, 12–13; Ashton Decl. ¶¶ 5, 10–11; Broadsword Decl. ¶¶ 7–10; *see also* Idaho Code § 74-106(25). Members of these organizations do not want their information turned over to the federal government due to concerns about data security and reports that the federal government has failed to properly safeguard sensitive Social Security information. Williams Decl. ¶¶ 9–10, 13; Ashton Decl. ¶¶ 9–11, 14; Broadsword Decl. ¶¶ 7, 10; *see also* Compl. at 7 (Prayer for Relief). These members also fear retaliation or unwarranted scrutiny due to their political activism or civic service, and they

13

fear that their data will not be properly protected and is liable to be misused. Williams Decl. ¶¶ 10–12, 14; Ashton Decl. ¶¶ 10–12; Broadsword Decl. ¶ 9.

These personalized interests satisfy the requirements of Rule 24(a)(2). *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents); *Celgard LLC v. Targray Tech. Int'l Inc.*, No. SAMC20-00128, 2021 WL 831030, at *2 (C.D. Cal. Feb. 10, 2021) (similar); *accord Jurj v. Andersen*, No. 3:21-CV-00088-YY, 2022 WL 19349528, at *4 (D. Or. Sep. 16, 2022) (similar). That this privacy interest implicates the right to vote bolsters Proposed Intervenors' interests here. *Cf. Ariz. All. for Retired Ams. v. Clean Elections USA*, 638 F. Supp. 3d 1033, 1040 (D. Ariz. 2022) (identifying privacy violations as sufficient to show intimidation against voting), *opinion vacated and appeal dismissed as moot*, No. 22-16689, 2023 WL 1097766 (9th Cir. Jan. 26, 2023); *see also League of United Latin Am. Citizens v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011) (reversing denial of intervention and concluding interests in the right to vote are "sufficient . . . to satisfy Rule 24(a)(2)"). Indeed, Proposed Intervenors' interest in protecting the privacy rights of their members likely even satisfies the higher bar for Article III standing. *See All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 101–04 (D.D.C. 2025) (holding membership organization established standing to challenge disclosures of information to federal agencies based on intrusions upon privacy interests of members); *see also Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (establishing standing means there is "an adequate interest under" Rule 24(a)).

*Second*, apart from the individual privacy rights of their members, the NAACP, NAACP Tri-State, and the Alliance each have significant and protectable interests *as organizations* in preserving their core missions of activating voters and encouraging Idaho citizens in their constituencies to vote free from fears of intimidation or harassment. Williams Decl. ¶ 7; Ashton

14

Decl. ¶¶ 8, 15; Broadsword Decl ¶ 5. For example, NAACP Tri-State already faces challenges convincing community members who are skeptical of the electoral system and worried about improper government scrutiny to engage in the political process by registering to vote. Williams Decl. ¶¶ 10–12, 14. Disclosure of voters' data will make that even more difficult. *Id.* ¶ 14. Its voter registration and engagement efforts include working with Idaho citizens who are immigrants and first-generation U.S. citizens. *Id.* ¶ 11. In view of the current administration's harsh treatment of immigrant communities, many voters in this group—even those plainly qualified to vote—are hesitant to engage in the political process if it means inviting federal scrutiny and retaliation against their families and communities. *See id.* The fear and distrust sown by DOJ's aggressive demands for personal information thus frustrates NAACP, NAACP Tri-State, and the Alliance's work.

Courts routinely recognize that organizations have significant protectable interests in preserving their own mission-critical organizational activities, particularly when it comes to ensuring their members and constituents' ability to register and vote. *See, e.g., Issa*, 2020 WL 3074351, at \*3; *Paher v. Cegavske*, No. 3:20-cv-00243, 2020 WL 2042365, at \*2 (D. Nev. Apr. 28, 2020); *cf. La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (recognizing that a political party had a "legally protectable interest" because they "expend significant resources in the recruiting and training of volunteers"). These interests would likely satisfy even the "more stringent" requirements for establishing an Article III injury. *Yniguez*, 939 F.2d at 735; *see also Chiles*, 865 F.2d at 1212–14 & n.16 (cautioning there is "less reason to be as finicky" in assessing an intervenor's interests than a plaintiff's asserted injury (citation omitted)).[8]

---

[8] *See e.g.*, *Brooklyn Branch of NAACP v. Kosinski*, 735 F. Supp. 3d 421, 436 (S.D.N.Y. 2024) (concluding Brooklyn NAACP had organizational standing considering its "long history of engagement efforts to support all voters in gaining access to the franchise"); *All. for Retired Ams.*, 770 F. Supp. 3d at 101–03 (similar); *DNC v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018)

### C.    The existing parties do not adequately represent Proposed Intervenors.

Proposed Intervenors cannot be assured of adequate representation of their distinct interests if they are denied intervention. "[T]he burden of making this showing is minimal" and is "satisfied if the applicant shows that representation of its interests may be inadequate." *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal. 2022) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)); *see also Berger*, 597 U.S. at 196 (citing *Trbovich*, 404 U.S. at 538 n.10). Courts are "liberal in finding" this requirement satisfied, recognizing that "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024).

DOJ does not represent Proposed Intervenors' interests; it seeks to forcibly compel production of Idaho's unredacted voter file. And while the Secretary has resisted that demand, he too does not adequately represent Proposed Intervenors' distinct interests. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). A government defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining the burden in these circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may

---

(concluding organization had injury sufficient to confer standing where challenged law would require it "to retool [its] [get-out-the-vote] strategies and divert . . . resources"), *rev'd on other grounds sub nom. DNC v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 983–87 (D. Ariz. 2024) (finding organizations had standing to protect members' voting rights), *aff'd in relevant part*, 129 F.4th 691 (9th Cir. 2025); *March for Our Lives Idaho v. McGrane*, 697 F. Supp. 3d 1029, 1039 (D. Idaho 2023) (similar); *cf. Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096–97 (9th Cir. 2021).

16

not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (quoting *Trbovich*, 404 U.S. at 538 n.10). This analysis cannot be conducted at too "high [a] level of abstraction,"—even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted); *cf. United Guar. Residential Ins. Co. v. Phila. Sav. Fund Soc.*, 819 F.2d 473, 475 (4th Cir. 1987) (explaining that, under *Trbovich*, "when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical, another with one of those interests should be entitled to intervene"). Even if the Secretary opposes the relief that DOJ seeks at a high level of abstraction, it does not follow that they share the same interests as private organizations committed to voter engagement and turnout. *See Berger*, 597 U.S. at 196.

The Secretary and Proposed Intervenors plainly do not share "identical" interests here. For one, the Secretary is obliged to enforce the requirements of HAVA, in addition to various state laws governing maintenance of the voter registration list. Thus, by definition, he has an obligation to weigh and carry out public duties that Proposed Intervenors do not share. *Cf. Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding adequate representation was not guaranteed where the existing defendant was "an elected official" whose interpretation of federal law might not always be aligned with intervenors' interests). And there is particularly good reason to believe the Secretary's interests here depart from those of the Proposed

17

Intervenors, given his past expressed willingness to cooperate with DOJ on this issue. *See* ECF No. 2-6 (stating that Idaho would "be in a position to provide voter registration data" and "work cooperatively" "to facilitate future uploads" of voter information).

Secretary McCrane's overtures to DOJ raises the prospect that he could "negotiate[] a settlement that would [be] contrary to the interest of the prospective intervenors," itself reason to find Proposed Intervenor's interests not adequately represented. *Fiandaca v. Cunningham*, 827 F.2d 825, 833 (1st Cir. 1987); *see also Kane Cnty. v. United States*, 928 F.3d 877, 895–96 (10th Cir. 2019) (recognizing "administration of . . . litigation resources" and "inclin[ation] to settle" may further establish inadequate representation). That prospect has become particularly acute as DOJ has moved on from chiefly suing Democratic-led States to suing recalcitrant Republican-led States—like Utah, West Virginia, Oklahoma, and now Idaho—in its most recent filings. Indeed, Oklahoma recently entered into a settlement with DOJ to turn over the state's voter file. *See* Notice of Voluntary Dismissal, *United States v. Ziriax*, No. 5:26-cv-00361-G (W.D. Okla. Mar. 24, 2026), ECF No. 24. Courts routinely find inadequate representation where there is a possibility that an existing defendant will resolve a case on terms that proposed intervenors would not agree to. *E.g.*, *City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011); *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999); *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024). While the Secretary's *most recent* position indicates opposition to providing DOJ with Idaho's protected voter information, his past statements at least raise the possibility that he could change course, *see* ECF No. 2-6, which is all that is required to show inadequate representation, *see Berg*, 268 F.3d at 823 (noting the "minimal" obligation to show existing parties "may be" inadequate (quoting *Trbovich*, 404 U.S. at 538 n.10)).

## II.    Alternatively, Proposed Intervenors should be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention.

18

Rule 24(b) is readily satisfied: Proposed Intervenors assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Proposed Intervenors have moved promptly, *see supra* Argument § I.A, and agree to abide by any schedule set by the Court or agreed to by the original parties—meaning there will be no delay or prejudice. And Proposed Intervenors' defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. A (Proposed Answer). These strong justifications for intervention explain why intervention has been permitted in one form or another in twenty-one of DOJ's suits and only expressly denied in one, with others pending still.

The Ninth Circuit has identified additional considerations the Court can consider in weighing permissive intervention requests. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). Those considerations—including the proposed intervenors' interests, the inadequacy of the representation of those interests, and the intervenors' contribution to the factual and legal issues, *see id.*—buttress the case for intervention here.

*First*, Proposed Intervenors seek to defend deeply personal privacy interests, as well as organizational interests unique to civic organizations. *See supra* Argument § I.B. *Second*, these parochial interests are not identical to the public interests of the existing governmental defendant, and may not be fully advanced absent their intervention. *See supra* Argument § I.C. *Finally*, the harms that vulnerable voters face and the arguments they advance will certainly contribute to the "full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Given that this action threatens to compel the disclosure of the personal data of more than a million Idaho voters to federal

19

officials, the letter and spirit of Rule 24 counsel strongly in favor of allowing parties who specifically represent the interests of voters to participate. *See Relman Colfax PLLC v. Fair Hous. Council of San Fernando Valley*, No. 19-cv-8612 PSG (JCX), 2020 WL 9460652, at \*1 (C.D. Cal. Apr. 20, 2020) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." (quoting Fed. R. Civ. P. 24 Advisory Committee's notes)).

For similar reasons, courts have often granted permissive intervention to civic organizations to ensure their voices are heard when litigation implicates the rights and privacy of voters, including in cases parallel to this one. *See, e.g.*, Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (granting permissive intervention to NAACP and NAACP Conference of CA/HI, among others, in lawsuit over California's unredacted voter registration database); *1789 Found. Inc. v. Fontes*, No. 24-cv-02987, 2025 WL 834919, at \*4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *see also League of Women Voters of N.C. v. North Carolina*, No. 1:13-cv-660, 2014 WL 12770081, at \*3 (M.D.N.C. Jan. 27, 2014) (permitting individual voters to intervene).

In short, because Rule 24 is liberally construed to protect Proposed Intervenors' rights and interests, and because Proposed Intervenors' participation will assist rather than prejudice efficient development and resolution of this matter, the Court should grant permissive intervention if it does not find that Proposed Intervenors are entitled to intervention as of right.

## CONCLUSION

Proposed Intervenors respectfully request that the Court grant them intervention as of right, or in the alternative, grant permissive intervention.

Dated: April 6, 2026

Respectfully submitted,
/s/ *Terri R. Pickens*
Terri R. Pickens (ISB #5828)
**PICKENS LAW, P.A.**
398 S. 9th Street, Suite 240
Boise, ID 83702
terri@pickenslawboise.com
Tel: (208) 954-5090
Fax: (208) 954-5099

David R. Fox*
Christopher Dodge *
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
dfox@elias.law
cdodge@elias.law
jpinchak@elias.law
Tel: (202) 968-4490

*Attorneys for Proposed Intervenors*
*\* Pro hac vice application forthcoming*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 6, 2026, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to all

counsel of record.


/s/ *Terri R. Pickens*


22