HARMEET K. DHILLON
Assistant Attorney General
ROBERT J. KEENAN
Acting Deputy Assistant Attorney General
ERIC V. NEFF
Acting Chief, Voting Section
JOHN R. CASALI (DC Bar No. 90037584)
RAYMOND YANG (CA Bar No. 354515)
Trial Attorneys, Voting Section
  Civil Rights Division
  U.S. Department of Justice
  4 Constitution Square
  150 M Street NE, Room 8.135
  Washington, D.C. 20002
  Email: john.casali@usdoj.gov
  Phone: (202) 316-8087

*Attorneys for the United States*

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>PHILIP MCGRANE, in his Official Capacity as Idaho Secretary of State,<br><br>  Defendant. | Case No. 1:26-cv-00197-BLW<br><br>**UNITED STATES' OPPOSITION TO IDAHO'S MOTION TO STAY** |

**INTRODUCTION**

The United States opposes a stay in this case because the orderly administration of justice is enhanced, not frustrated, by the case proceeding on an appropriate expeditious schedule. Title III of the Civil Rights Act of 1960 ("CRA") is a simple statute that, among other things, mandates the swift production of election records upon demand by the United States Attorney General.

1

Nothing about the litigation in other states — even states within the Ninth Circuit — prevents this Court from issuing an appropriate, timely, and lawful order for the production of election records.

## BACKGROUND

The United States initiated this action on April 1, 2026, through the filing of a Complaint (Dkt. No. 1) and a Motion for Order to Compel Production of Records pursuant to 52 U.S.C. § 20701, *et seq.* ("Motion to Compel") (Dkt. No. 2).

Other district courts within the Ninth Circuit have considered, or are currently considering, similar actions regarding the statewide voter-registrations lists ("SVRL") of other states. *See, e.g., United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) (Oregon), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) (California), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Fontes*, No. 2:26-cv-00066-SMB (D. Ariz. filed Jan. 6, 2026) (Arizona); *United States v. Aguilar*, No. 3:25-cv-00728-ART-CLB (D. Nev. filed Dec. 11, 2025) (Nevada); *United States v. Nago*, No. 1:25-cv-00522-LEK-RT (D. Haw. filed Dec. 11, 2025) (Hawaii); *United States v. Hobbs*, No. 3:25-cv-06078-KKE (W.D. Wash. filed Dec. 2, 2025) (Washington).

## LEGAL STANDARD

A district court "possesses 'inherent authority to stay federal proceedings pursuant to its docket management powers.'" *Chinaryan v. City of Los Angeles*, 122 F.4th 823, 825 (9th Cir. 2024) (quoting *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024)). The court weighs three non-exclusive factors: (1) the possible damage resulting from the granting of a stay; (2) the hardship suffered by a party in going forward; and (3) the orderly course of justice in terms of simplifying or complicating of issues, proof, and questions of law. *Id.*

2

OPPOSITION TO MOTION TO STAY

## ARGUMENT

### I.    A Stay May Cause Damage to Federal Elections.

A stay of this case is not appropriate because a stay would deprive the United States Attorney General of the ability to fulfill his statutory duty to ensure state compliance with federal voting law.  While Idaho claims the United States is not harmed by delay because there is currently no allegation Idaho is failing in its obligation to maintain its voter lists, case law makes clear that Title III is an investigative tool primarily aimed at evaluating "possible violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (quoting 106 Cong. Rec. 7767 (1960) (statement of Sen. Kenneth B. Keating)).  Such statutes include the National Voter Registration Act of 1993 ("NVRA") and the Help America Vote Act of 2002 ("HAVA").

Importantly, a proceeding to enforce a written demand under Title III is not "an ordinary, traditional civil action with all of its trappings," *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962); rather, it is "a summary proceeding."  *Id*. at 226.  Therefore, "[t]he Court, with expedition, should grant the relief sought or, if the [custodian of the election records] opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination.  These are, of course, severely limited."  *Id*.  In *Lynd*, the Fifth Circuit criticized the district court in one of the cases on appeal, commenting with exasperation that there was "no indication that this interminable proceeding would ever come to an end."  *Id*. at 227.  The *Lynd* court added that "the disposition [of a Title III proceeding] would hardly be the prompt one which our decisions require if effective compliance is to be postponed five months."  *Id*. at 231.

In the instant proceeding, defendant seeks, in the alternative to a stay that might last several months, an extension of time until June 30, 2026, to respond to the Complaint and the Motion to Compel.  Such an extension, which the United States does not oppose, would be likely to result in a decision by this Court more than four months after the filing of the Complaint, but it would at

3

least ensure a relatively prompt decision.  Although cases raising similar issues are pending in other courts, the instant case specifically concerns the right of voters in Idaho to vote with confidence in the upcoming federal election — confidence that can only come from having the Attorney General verify, in advance of that election, Idaho's compliance with federal voting laws. Delay could preclude the relief that the voters of Idaho deserve.  In addition, if the Ninth Circuit issues a decision while this case is in the midst of briefing, this Court can order supplemental briefing narrowly focused on the effect of the decision.

Moreover, if Idaho is indeed deficient in its list maintenance practices, a federal enforcement action may be necessary to ensure Idaho removes ineligible voters from its statewide voter registration list ("SVRL").  Accurate voter rolls ultimately protect the constitutional rights of all eligible voters by ensuring their vote is not diluted by the vote of someone who is not eligible. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021) (voting fraud "dilute[s] the right of citizens to cast ballots that carry appropriate weight"); *see generally Reynolds v. Sims*, 377 U.S. 533 (1964).

If, however, an SVRL is obtained to close to an election, the utility of these enforcement actions may be restricted under the *Purcell* principle.  *See Purcell v. Gonzales*, 549 U.S. 1 (2006) (per curium).  Under this principle, "federal courts ordinarily should not enjoin a state's election laws in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring).  Indeed, *Purcell* is implicated when "an impending election is imminent and a State's election machinery is already in progress." *Am. Encore v. Fontes*, 152 F.4th 1097, 1121 (9th Cir. 2025) (quoting *Reynolds*, 377 U.S. at 585).  As a result, the United States might lose the relief it seeks in a case alleging a HAVA violation if such a case were decided too close to Idaho's 2026 general federal election.  *Cf. Colon-Marrero v. Conty-Perez*, 703 F.3d 134,

4

OPPOSITION TO MOTION TO STAY

139 (1st Cir. 2012) (per curiam) (denying injunctive relief, where the plaintiff had shown a likelihood of success for a HAVA claim and where the complaint was filed less than two months before general election day, because any relief would occur too close to election day); *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (en banc) (per curiam) (denying relief under the Voting Rights Act of 1965, when possibility of success was shown, because any relief would occur during an election after voting had already begun). If Idaho's SVRL is not in compliance with federal law, a stay increases the chance the *Purcell* rule might limit the ability of this Court to require Idaho to bring its SVRL into compliance under HAVA in time for the 2026 general federal election. Thus, a stay could potentially harm the rights of the eligible voters of Idaho until a later election.

## II.     Defendant Will Face No Hardship If a Stay Is Denied.

Defendant does not incur any additional obligations from the denial of a stay. Regardless of which way the Court rules on the merits in this case, a denial of a stay imposes on Defendant the same obligations it would have had previously — but in a more expeditious manner. If this Court agrees with the United States that Idaho must produce its SVRL, any relief granted to the United States in this action imposes no more of a burden than the burden Idaho already faced under the record retention requirements of Title III, *see* 52 U.S.C. § 20701, and there is no hardship to Idaho in having to produce the SVRL now rather than later.

Although Idaho highlights recent non-binding authority interpreting Title III and rejecting similar actions by the United States (*see* Mot. at 2 n.2; Dkt. No. 13), there is similarly non-binding authority contemporaneous to Title III's enactment that supports the opposite outcome. *See Lynd*, 306 F.2d 222; *Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962), *aff'd sub nom. Coleman*, 313 F.2d 867, *cert. denied*, 373 U.S. 950 (1963);

OPPOSITION TO MOTION TO STAY

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir.), *cert. denied*, 366 U.S. 913 (1961).

Furthermore, the denial of a stay does not cause hardship because a decision by the Ninth Circuit would not necessarily resolve this case. Although a Title III action was brought to ensure compliance with both the NVRA and HAVA in the cases currently on appeal before the Court of Appeals (*see* Defendants-Appellees' Answering Brief at 37–44, 39 n.8 in *United States v. Weber*, No. 26-1232 (9th Cir. Apr. 17, 2026), Dkt. No. 59.1; Appellees' Brief at 28 in *United States v. Oregon*, No. 26-1231 (9th Cir. Apr. 17, 2026), Dkt. No. 41.1), the instant action only concerns compliance with HAVA since Idaho is exempt from the NVRA, *see* 52 U.S.C. § 20503(b) (exempting certain states from the NVRA); *see also id.* § 21083(b)(5) (continuing certain exemptions for NVRA-exempt states).

An issue in dispute is whether Title III can be used to ensure compliance with federal voting laws, such as the NVRA and HAVA, that were not in existence during the CRA's enactment. *Compare Weber*, 2026 WL 118807, at *9 (rejecting NVRA compliance as a valid reason for a Title III request), *with United States v. Benson*, No. 1:25-cv-01148-HYJ-PJG, 2026 WL 362789, at *8 (W.D. Mich. Feb. 10, 2026) ("There is no rule of statutory interpretation that prevents a statute from interacting with, or being used in conjunction with, subsequently enacted statutes."), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026). The NVRA and the HAVA impose related but different obligations, however, and therefore a ruling by the Court of Appeals in a case involving the question of compliance with both the NVRA and the HAVA might not be binding authority in a case involving only HAVA compliance. In short, each statute's interaction with another is subject to its own *independent* statutory analysis. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("[W]ords of a statute must be read in their context and with

6

OPPOSITION TO MOTION TO STAY

a view to their place in the overall statutory scheme."). "[I]f it is not necessary to decide more, it is necessary not to decide more." *Wells v. BNSF Ry. Co.*, 168 F.4th 574, 580 n.2 (9th Cir. 2026) (quoting *Morse v. Frederick*, 551 U.S. 393, 431 (2007) (Breyer, J., concurring in the judgment in part and dissenting in part)).  Therefore, it is speculative to conclude that a ruling by the Ninth Circuit in the pending appeals will dispose of all pertinent issues in this case.

**III.     The Orderly Course of Justice Does Not Favor a Stay.**

The election records sought in this case under Title III are necessarily related to voting, voter rolls, and other important 2026 election mechanisms.  It is important for election integrity and the orderly administration of litigation that the Attorney General be able to complete his oversight in an expeditious manner consistent with his duties under federal election statutes.

Particularly because the *Purcell* principle looms large, the orderly course of justice favors a fully briefed case for this Court to consider.  Far from "briefing in this case . . . be[ing] rendered irrelevant by the Ninth Circuit's binding decision," (Mot. at 3; Dkt. No. 13), continued briefing will keep open the option of granting the election records in time for the United States to potentially enforce HAVA.  *See* 52 U.S.C. § 21111 (granting the Attorney General civil enforcement power over HAVA).  Because the United States seeks these records to investigate Idaho's compliance with federal voting law and seeks to do so in time for the 2026 general federal election, this Court should deny a stay.

OPPOSITION TO MOTION TO STAY

## CONCLUSION

For all the foregoing reasons, the Court should deny the State's motion for a stay.

DATED: April 28, 2026.                    Respectfully submitted,

                                          HARMEET K. DHILLON
                                          Assistant Attorney General
                                          ROBERT J. KEENAN
                                          Acting Deputy Assistant Attorney General
                                          ERIC V. NEFF
                                          Acting Chief, Voting Section


                                             /s/ *John R. Casali*    
                                          JOHN R. CASALI
                                          RAYMOND YANG
                                          Trial Attorneys, Voting Section
                                            Civil Rights Division
                                            U.S. Department of Justice
                                            4 Constitution Square
                                            150 M Street NE, Room 8.135
                                            Washington, D.C. 20002
                                            Email: john.casali@usdoj.gov
                                            Phone: (202) 316-8087

OPPOSITION TO MOTION TO STAY