RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

AARON M. GREEN, ISB #12397
Deputy Attorneys General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
aaron.green@ag.idaho.gov

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>PHILIP MCGRANE, in his official Capacity as IDAHO SECRETARY OF STATE<br><br>*Defendant.* | Case No. 1:26-cv-00197-BLW<br><br>**REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS OR IN THE ALTERNATIVE EXTENSION OF TIME TO RESPOND TO THE COMPLAINT AND TO ALL PENDING MOTIONS [Dkt. 13]** |

### INTRODUCTION

The Court should stay proceedings in this case because the Ninth Circuit will hear oral argument in less than three weeks on the very issue at stake in this case: the application of Title III of the Civil Rights Act of 1960. At this point, six district courts have unanimously rejected the arguments of the United States that the statute allows the United States Attorney General to demand unredacted voter rolls—in fact, Title III does not.[1] *See United States v. Fontes*, ___ F. Supp. 3d ____, No. CV-26-00066-PHX-SMB, 2026 WL 1145626 (D. Ariz. Apr. 28, 2026). There is no reason to rush to decision when the Ninth Circuit will shortly offer binding guidance in this field.

### ARGUMENT

The United States offers two basic arguments as to why the Court should decline a stay. Each is unpersuasive, and the Court should stay proceedings pending a decision in the consolidated appeal in *United States v. Weber*, Case No. 26-1232 and *United States v. Oregon*, Case No. 26-1231.

### I.    No party will suffer harm from a stay.

The United States argues it will suffer harm because it hypothesizes that Idaho might be violating the Help America Vote Act ("HAVA") in the interim. Dkt. 18 at 3–5. But there are no allegations in the Complaint, or in any letters attached to the Complaint, or in the pending motion to compel, that Idaho *is* violating HAVA. This is pure and unjustified supposition by the United States and is inadequate to show harm from the contemplated stay. Idaho has not only complied with its obligations under HAVA, but Secretary McGrane has taken the action that the Department of Justice wants to duplicate itself: run Idaho's voter rolls against the Department of Homeland

---

[1] *See also* cases cited at Dkt. 13 at 3 n.2.

Security's SAVE database. There is no conceivable harm from waiting for the Ninth Circuit to rule before ruling on the Department of Justice's request to duplicate Idaho's efforts.

The United States raises two sub-arguments in support of its harm theory: (1) urging that it has a right under Title III to a summary proceeding (Dkt. 18 at 4) and (2) that this case should thus be on a fast track or else risk a conflict with *Purcell v. Gonzales*, 549 U.S. 1 (2006) (Dkt. 18 at 4–5) when the United States brings a hypothetical enforcement action in advance of the 2026 general election.

Contrary to the United States' position that the Department of Justice is entitled to a summary proceeding to enforce the record request, most courts to rule on the issue have found either that Title III does not entitle the Department of Justice to summary proceedings, or that the United States has subjected these proceedings to the Rules of Civil Procedure.[2] These cases, citing Supreme Court precedent that post-dates the non-binding Fifth Circuit decisions cited by the United States, are generally correct—the Department of Justice is not entitled to a summary proceeding whether the request is characterized as a subpoena or not. Thus, the United States is not being harmed by being deprived of a right to a summary proceeding that does not exist.

The *Purcell* point is equally unavailing. While the United States argues that it might seek injunctive relief in advance of Idaho's 2026 general election, depending on its review of Idaho's voter rolls, this relief likely would not run afoul of *Purcell* doctrine even if it came close to a general election. The Supreme Court in *Purcell* and subsequent cases held that "federal courts

---

[2] *Weber* (California), 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *7–8; *Amore* (Rhode Island), 2026 WL 1040637, at *3; *Fontes* (Arizona), 2026 WL 1145626, at *1 n.1; *Galvin* (Massachusetts), 2026 WL 972129, at *1 n.3 (taking no explicit position but granting motion to dismiss); *but cf. Benson* (Michigan), 2026 WL 362789, at *7 (finding Rules of Civil Procedure did not generally apply under Sixth Circuit caselaw but that United States had changed the relevant procedural posture by bringing claims under HAVA and NVRA in addition to Title III).

ordinarily should not enjoin a state's election laws in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (mem) (Kavanaugh, J. concurring) (describing *Purcell* doctrine and collecting cases applying the doctrine). In weighing the appropriateness of injunctive relief, a court must "weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures. Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." 549 U.S. at 4–5.

But Courts "must assess the particular circumstances of each case in light of the concerns expressed by the *Purcell* court to determine whether an injunction is proper." *Am. Encore v. Fontes*, 152 F.4th 1097, 1121 (9th Cir. 2025) (citation omitted). The hypothetical request for relief outlined by the United States (to the extent we can tell what it would look like, *see* Dkt. 18 at 4) for a hypothetical future enforcement action based on an unpled and unspecified violation of federal law would not appear to result in any injunction against Idaho's voting procedures, or cause voter confusion, and therefore does not implicate *Purcell.* If Idaho must in a future hypothetical enforcement action run its voter registration list against SAVE again at the demand of the Department of Justice, it can certainly do that without throwing voting into confusion. Indeed, Idaho law already requires the Secretary to compare registered voters with the SAVE database, and Idaho has already done so. Idaho Code § 34-433(3)(a).

And, in the alternative, if *Purcell* does indeed apply to such a hypothetical request for future relief, as the United States suggests, the time to act to obtain relief for the 2026 general election has already passed. *Purcell* applies not only to caution against injunctive relief by a federal court close to a general election in a manner that requires interference in state election practices, but also

to the period during which state primary elections for federal office are held. Indeed, federal courts are already denying relief to litigants considering this year's primary elections under *Purcell*. *Colorado Republican Party v. Griswold*, No. 23-cv-01948-PAB-KAS, 2026 WL 1145559 (D. Colo. Apr. 28, 2026). Denial of injunctive relief falling after the primary and before the general is likely. Idaho's primary election for federal offices is on May 19, 2026, and "election machinery is already in progress."[3] *Purcell*, *supra*. Speaking of the general election, the resolution of this case in July or August 2026 (and hence *the beginning* of any hypothetical injunction or enforcement action contemplated by the United States) will surely fall within the bounds of *Purcell*. *Merrill*, 142 S. Ct. 879 (granting stay of district court injunction of redistricting plan within four months of primary and nine months of general election).[4] If contemplated enforcement action would actually cause voter confusion, then it is already too late to bring such action for 2026.

Consequently, to the extent the *Purcell* doctrine *could* apply, any relief the United States could request *already* falls within the *Purcell* window and would even now need to contend with the strong policy against such relief close to an election.

## II. The pending cases in the Ninth Circuit will likely aid the Court's analysis in this case.

The United States argues that because the issues in the consolidated Ninth Circuit appeal may range beyond the strict contours of Title III, the Ninth Circuit proceedings do not adequately bear on this case to justify a stay. This isn't correct. In both the *Weber* (California) and *Oregon* appeals, the only statutory authority for compelling disclosure of unredacted voter rolls that the

---

[3] *See* https://voteidaho.gov/calendar/list/?tribe-bar-date=2026-04-29 (last visited April 29, 2026) (listing May 5 as the deadline for county clerks to finish mailing ballots, May 8 for the voter pre-registration deadline, and May 19 as election day). For the general election, ballots are mailed from October 9 through October 20, voter pre-registration closes October 23, and the general election is on November 3, 2026.

[4] *See* dissent of Justice Kagan at 142 S. Ct. at 888 for facts and timeline below.

REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS OR IN THE ALTERNATIVE
RESPOND TO THE COMPLAINT AND TO ALL PENDING MOTIONS [DKT. 13]—4

United States relies on is Title III of the Civil Rights Act. *See* 9CA Case No. 26-1232, Dkt. 39.1 at 12–13 (noting in statement regarding oral argument "[t]his appeal raises important issues of first impression in this Circuit regarding the proper application of Title III, Section 303, of the Civil Rights Act of 1960" and describing Title III and countervailing privacy laws as statutes at issue); and 9CA Case No. 26-1231, Dkt. 26.1 at 10–11 (same).

While the Department of Justice's investigation into California and Oregon's practices may include National Voter Registration Act (NVRA) and HAVA violations, *neither* is the statutory authority on which the United States is proceeding on appeal. Title III is. The interpretation of Title III is the primary statutory construction issue on appeal in the consolidated case, so it "bear[s] upon th[is] case" and justifies a stay. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). And even if the posture of *Weber* and *Oregon* does somewhat differ from this case, a case does not have to be exactly on all-fours to justify a stay. *Benisek v. Lamone*, 585 U.S. 155, 160–61 (2018) (affirming district court stay of proceedings when district court found pending appeal could offer "framework" for adjudicating election law claims in a "fluctuating" legal environment). The extensive overlap with *Weber* and *Oregon* justifies a stay here.

### III.  The *Landis* factors support a stay.

The factors applied in the Ninth Circuit under *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936), *see* Dkt. 13 at 2, plainly counsel a stay. On the first factor, no party will be damaged from a stay. Dkt. 13 at 2. On the second factor, as to harm going forward without a stay, no party, nor the Court, benefits from fully briefing multiple motions whose necessity may be mooted or whose analysis is rendered out-of-date by binding circuit authority. By contrast, the United States will not have time, whether or not a stay is granted, to seek any form of injunctive relief without the need to deal with the *Purcell* doctrine—to the extent *Purcell* applies at all to any hypothetical request for relief. On the third factor, the orderly course of justice will be furthered by a stay

because the Court's analysis will no doubt benefit from receiving what will be the only binding authority in this Circuit on Title III's scope. Staying the case pending the Ninth Circuit's mandate in *Weber* and *Oregon* therefore furthers the orderly course of justice, and the Court should therefore grant the motion to stay all proceedings.

### IV.  In the alternative, the Court should extend deadlines.

In their brief, the United States noted that it does not oppose extending deadlines for Secretary McGrane to respond to pending motions through June 30, 2026. Dkt. 18 at 3. If the Court denies the stay, the Court should grant the uncontested form of relief.

### CONCLUSION

The Court should grant a stay of proceedings, pending the Ninth Circuit's ruling in *Weber* and *Oregon*, or in the alternative extend the response deadline to June 30, 2026, for all pending motions.

DATED: April 30, 2026

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *Aaron M. Green*
AARON M. GREEN
Deputy Attorney General

*Attorney for Defendant*

REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS OR IN THE ALTERNATIVE
RESPOND TO THE COMPLAINT AND TO ALL PENDING MOTIONS [DKT. 13]—6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on April 30, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

John R. Casali
john.casali@usdoj.gov

Raymond Yang
raymond.yang@usdoj.gov

*Attorneys for Plaintiff*

Christopher D. Dodge
cdodge@elias.law

David R. Fox
dfox@elias.law

James J. Pinchak
jpinchak@elias.law

Terri R. Pickens
terri@pickenslawboise.com

*Attorneys for Proposed Intervenors*

/s/ *Aaron M. Green*
AARON M. GREEN